UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

TERESA MOREY,

                    Plaintiff,

v.                                                         Case No. 6:19-CV-00024

AVANTE AT LYNCHBURG, INC.,
AVANTE GROUP, INC.,                                        DEMAND FOR JURY TRIAL
CURIS AT LYNCHBURG OPCO, LLC,
d/b/a CURIS AT LYNCHBURG NURSING AND
REHABILITATION CENTER
CURIS AT LYNCHBURG PROPCO, LLC,
CURIS HEALTH SYSTEMS, LLC,
SENTOSACARE, LLC,

                    Defendants.

## SECOND AMENDED COMPLAINT

Plaintiff Teresa Morey ("Morey" or "Plaintiff"), by and through undersigned counsel,

hereby complains as follows against Defendants Avante at Lynchburg, Inc.; Avante Group, Inc.

(individually or collectively, "Avante" or the "Avante Defendants"); and Curis at Lynchburg

Opco, LLC; Curis at Lynchburg Propco, LLC; Curis Health Systems, LLC; and SentosaCare,

LLC (individually or collectively, "Curis" or the "Curis Defendants").

## <u>SUMMARY OF ACTION</u>

1.      Plaintiff brings this action to redress violations by Defendants of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with

Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family and Medical Leave Act, 29

U.S.C. § 2601, *et seq.* ("FMLA"), and related state law claims. Specifically, Plaintiff alleges:

(a) The Avante Defendants discriminated against Plaintiff due to her sex, subjected her to sexual harassment, including sexual battery and assault, and to a hostile work environment due to her sex, and failed to take corrective action despite her repeated pleas for protection;

(b) the sexual harassment, battery, and assault that Morey experienced rendered her working conditions intolerable and caused her to suffer severe psychological injuries, requiring her to take medical leave;

(c) the Avante Defendants denied Morey job-protected FMLA leave to which she was entitled, and indicated she was only allowed to take temporary "personal leave" that was not job-protected;

(d) after Morey went out on non-job-protected personal leave under Avante, the Curis Defendants replaced Avante as the employer at her worksite;

(e) while Morey was on leave, her employment was terminated -- either by the Avante Defendants before the transition to Curis, and/or by Curis after the transition -- because of her disability, request for leave, and/or need for FMLA/medical leave,; and

(f) Curis and/or Avante discriminated against Morey on the basis of disability and/or retaliated against Morey for exercising her rights under the ADA and/or the FMLA and/or interfered with Morey's exercise of her FMLA rights by terminating or denying her employment because she was disabled and needed medical leave for the injuries caused by the sexual harassment, battery, and assault.

2.      In short, Avante rendered Morey disabled by subjecting Morey to sexual harassment, battery, and assault, which required her to take medical leave, and Curis and/or

2

Avante terminated Morey or denied Morey employment because she was disabled and needed medical leave.

## JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States. This Court further has subject matter jurisdiction over the claims raised herein pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5; Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a); the Family and Medical Leave Act, 29 U.S.C. § 2617; and pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4.      This Court has subject matter jurisdiction over the attendant state law claims pursuant to 28 U.S.C. § 1367.

5.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3). Plaintiff was employed by or denied employment by Defendants in this judicial district; Defendants are located in this district; Plaintiff's personnel records are maintained by Defendants in this district; the unlawful employment practices at issue occurred in this district; and/or a substantial part of the events or omissions giving rise to her claims occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

7.     Venue is proper in the Lynchburg Division under Local Rule 2(b) because Defendants employed Plaintiff or denied Plaintiff employment in this division, and a substantial part of the events or omissions that gave rise to this action occurred in this division.

## PARTIES

8.     Plaintiff Teresa Morey is a female resident of Virginia and a citizen of the United States. From approximately April 1, 2017 through May 31, 2018, Plaintiff worked as a nurse for Avante at a medical facility in Lynchburg, Virginia (the "Lynchburg Facility" or the "Facility"). On or about June 1, 2018, Curis replaced Avante as the employer of nurses and other staff and provider of nursing services at the Facility. Prior to the transition, Morey was on leave receiving treatment for the psychological injuries caused by sexual harassment, battery, and assault described herein. Other Avante nurses and staff who were not disabled and not on medical leave had their employment at the Facility transitioned from Avante to Curis with no break in employment. These employees continued to work at the Facility under Curis performing the same jobs at the same worksite with the same personnel and the same equipment and providing the same services as they had under Avante with complete continuity of business operations. However, Curis refused to allow Morey to continue her employment under Curis because she was on medical leave at the time of the transition from Avante to Curis at the Facility. Alternatively, Avante terminated Morey prior to the transition while she was on leave because of her disability and/or need for medical leave, or the Curis and Avante Defendants acted together in terminating Morey's employment because of her disability and/or need for medical leave.

9.     At all relevant times, Plaintiff was an employee of Defendants within the meaning of 42 U.S.C. § 2000e(f) and 42 U.S.C. § 12111, and an eligible employee under 29 U.S.C. § 2611(2).

10.     Defendant Avante at Lynchburg, Inc. is a Virginia corporation with its principal office located at 2081 Langhorne Road, Lynchburg, VA 24501 (a.k.a. the "Lynchburg Facility" or the "Facility").

11.     Defendant Avante Group, Inc. is a Florida corporation, authorized to do business in Virginia, with its principal office at 4601 Sheridan Street, Ste 500, Hollywood, Florida 33021.

12.     At all relevant times, Avante at Lynchburg, Inc. and Avante Group, Inc. were joint employers of Morey. At all relevant times, Avante at Lynchburg, Inc. and Avante Group, Inc., together with Avante Group, Inc.'s other divisions or entities, were a single, integrated employer of Morey. Upon information and belief, Avante Group, Inc. owns and operates Avante at Lynchburg, Inc. from its corporate headquarters in Florida. Avante at Lynchburg, Inc. is an entity created by Avante Group, Inc. to provide nursing services at the Lynchburg Facility, where Morey worked. At all relevant times, Avante Group, Inc. controlled and had the right to control Avante at Lynchburg, Inc. and the employees who worked at the Lynchburg Facility and made personnel decisions regarding Morey and other Avante employees working at the Lynchburg Facility. At all times relevant, Avante Group, Inc. had the power to stop the sexual harassment, assault, and battery that Morey suffered at its Lynchburg Facility. At all relevant times, Avante Group, Inc. knew or should have known about the sexual harassment, assault, and battery that Morey suffered, but did nothing to stop the harassment, assault, and battery or otherwise protect Morey.

13.     Defendant Curis at Lynchburg Opco, LLC is a Delaware limited liability company, authorized to do business in Virginia, with its principal office located at 945 Broadway, Woodmere, NY 11598. This Defendant provides nursing services at the Lynchburg

Facility where Morey worked. This Defendant hires and employs workers to provide nursing services at the Facility and made the decision to fire or not hire Morey.

14.     Defendant Curis at Lynchburg Propco, LLC is a Delaware limited liability company, authorized to do business in Virginia, with its principal office located at 945 Broadway, Woodmere, NY 11598. This Defendant provides nursing services at the Lynchburg Facility where Morey worked. This Defendant hires and employs workers to provide nursing services at the Facility and made the decision to fire or not hire Morey.

15.     Defendant Curis Health Systems, LLC is a Delaware limited liability company, authorized to do business in Virginia, with its principal office located at 945 Broadway, Woodmere, NY 11598. This Defendant provides nursing services at the Lynchburg Facility. This Defendant hires and employs workers to provide nursing services at the Facility and made the decision to fire or not hire Morey.

16.     Upon information and belief, Defendant SentosaCare, LLC is a New York limited liability company with its principal offices located at 100 Daniel Drive, Webster, NY 14580 and/or 20 Franklin Place, Woodmere, NY 11598 and/or 1050 Central Avenue, Woodmere, NY 11598. Upon information and belief, SentosaCare, LLC owns and operates the "Curis at Lynchburg" and "Curis Health Systems" Defendants from its corporate headquarters in New York. The "Curis at Lynchburg" and "Curis Health Systems" Defendants are entities created by SentosaCare, LLC to provide nursing services at the Lynchburg Facility where Morey worked. Upon information and belief, at all relevant times, SentosaCare, LLC controlled and had the right to control the "Curis at Lynchburg" and "Curis Health Systems" Defendants and the employees who worked at the Lynchburg Facility and made personnel decisions regarding Morey and other employees or prospective employees at the Lynchburg facility. This Defendant hires and

employs workers to provide nursing services at the Facility and made the decision to fire or not hire Morey.

17.     In refusing to allow Morey to continue her employment under Curis upon the transition from Avante to Curis at the Lynchburg Facility, the Curis Defendants acted as joint employers with respect to Morey. In refusing to allow Morey to continue her employment under Curis upon the transition from Avante to Curis at the Lynchburg Facility, the Curis Defendants (together with other Curis divisions or entities) acted as a single, integrated employer with respect to Morey.

18.     Curis' reason for refusing to allow Morey to continue her employment under Curis was that, at the time of the transition from Avante to Curis, Morey was on medical leave.

19.     Upon information and belief, Curis is a successor in interest to Avante. To the extent Curis is a successor in interest to Avante, Curis is responsible (jointly and severally with Avante) for Avante's unlawful conduct with respect to Morey, as well as for Curis' own ADA and FMLA violations.

20.     At all times relevant, each Defendant has continuously been an employer engaged in an industry affecting commerce pursuant to 42 U.S.C. § 2000e(b).

21.     Each Defendant is an employer within the meaning of the ADA.

22.     At all times relevant, each Defendant has been a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, or an agent of such person.

23.     Each Defendant is an employer with the meaning of the FMLA.

24.     At all times relevant, each Defendant has been a person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each

working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

25.     Each Defendant has had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

26.     Each Defendant has had more than 500 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

27.     Each Defendant has had more than 200 and fewer than 501 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

28.     Each Defendant has had more than 100 and fewer than 201 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

29.     Each Defendant has had more than 14 and fewer than 101 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

30.     At all relevant times, each Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant in the course and scope of their employment with Defendant.

## CURIS' SUCCESSOR-IN-INTEREST LIABILITY

31.     Upon information and belief, Curis is a successor in interest to Avante. To the extent Curis is a successor in interest to Avante, Curis is responsible (jointly and severally with Avante) for Avante's unlawful conduct with respect to Morey, as well as for Curis' own ADA and FMLA violations.

32.     Curis had actual notice of Morey's claims of sexual harassment, assault, battery, and constructive discharge prior to taking over Avante's operations at the Facility. For example, on or about April 23, 2018, Morey submitted to Avante documentation from her physician

recommending a medical leave of absence as a result of injuries resulting from "workplace sexual harassment." Morey was subsequently informed that if she did not return to work by May 31, 2018, she would be fired by Curis because she was on medical leave. Therefore, Curis apparently had access to Morey's medical leave documentation, which would have provided Curis with actual notice of both Morey's "workplace sexual harassment" claims and the injuries caused by that harassment.

33.     Morey's constructive discharge claim is based on her sexual harassment claim, and her battery and assault claims are based on the same conduct as the sexual harassment claim. Thus, Morey's medical leave documentation provided Curis with actual notice of Morey's claims of sexual harassment, constructive discharge, battery, and assault (and Curis' potential liability for those claims).

34.     In addition, Curis obtained or should have obtained actual notice of Morey's claims from other sources, such as from conversations with Avante's management who had personal knowledge of the claims.

35.     Curis also had constructive notice of Morey's claims (and of its potential liability for these claims) prior to taking over Avante's operations at the Facility.

36.     For example, Curis had constructive notice of Morey's claims because knowledge of her claims can be imputed to Curis based on its ability to exercise due diligence prior to the transfer, which would have or should have informed Curis of Morey's claims. *See, e.g., Lipscomb v. Techs., Servs., & Info., Inc.*, No. CIV.A. DKC-09-3344, 2011 WL 691605, *9 (D. Md. Feb. 18, 2011); *EEOC v. 786 South LLC*, 693F.Supp.2d 792, 795 (W.D. Tenn. 2010); *Lyles v. CSRA Inc.*, No. GJH-18-973, 2018 WL 6423894, *4 n3 (D. Md. Dec. 4, 2018). Morey formally notified Avante's upper management in writing of her sexual harassment claims on or

about February 1, February 2, February 5, February 14, February 23, March 1, March 8, March 14, March 23, April 6, and April 13, 2018, among other occasions. With reasonable due diligence, Curis would have been able to obtain copies of these written complaints and ascertain that Morey had filed multiple complaints of sexual harassment. Curis therefore had constructive notice of Morey's claims (and its potential liability for those claims) by virtue of Morey's pre-sale written complaints and Curis' due diligence.

37.     As a second example of how Curis had constructive notice of Morey's claims, Avante's upper management became managers and directors for Curis at the Facility after the transfer from Avante to Curis. A successor company like Curis can have constructive notice of discrimination claims where the predecessor company's management, having personal knowledge of those claims, then become managers for the successor. That happened here. Prior to the transfer, Morey filed multiple detailed complaints regarding her harassment claims with Avante's Director of Nursing (Joy Magnan), Avante's Executive Director (Nathan Libassi), Avante's Human Resources Manager (Tammy Robbins), and Avante's corporate offices in Florida. Magnan, Libassi, and/or Robbins continued on with Curis after the transition. Thus, Curis had constructive notice of Morey's claims through Magnan, Libassi, and/or Robbins. *See, e.g., EEOC v. Sage Realty Corp.*, 507 F. Supp. 599, 612 (S.D.N.Y.), *decision supplemented*, 521 F. Supp. 263 (S.D.N.Y. 1981).

38.     As a result of the transfer to Curis, Avante at Lynchburg has ceased doing business and no longer has income or assets with which to satisfy a potential judgment in this case. Although Morey asserts that Avante Group is liable for her claims as an employer or joint employer, Avante Group has denied it was Morey's employer. Upon information and belief, the Avante Defendants collectively lack the ability to provide complete relief for Morey's claims.

39.     The transfer of the Facility from Avante to Curis has resulted in the substantial continuity of business operations at the Facility because Curis uses the same facility that Avante had, and employs substantially the same workforce with substantially the same supervisory personnel. Moreover, the same jobs continue to exist in the same working conditions, the same equipment is being used, and the same services are being provided. *See EEOC v. Phase 2 Investments Inc.*, 310 F. Supp. 3d 550, 569 (D. Md. 2018) (quoting *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974)).

40.     Curis is liable as Avante's successor for Morey's common law claims of assault and battery because of the complete continuity of business operations during and after the transfer of the Facility from Avante to Curis, including the same personnel and management performing the same jobs in the same conditions after the transfer. *See Kaiser Found. Health Plan of Mid-Atl. States v. Clary & Moore, P.C.*, 123 F.3d 201, 204 (4th Cir. 1997).

41.     Curis' operation of the Facility was "merely a continuation" of Avante's operation. *Id.* at 204. There was a common identity of managers, officers, and directors from Avante to Curis. For example, the Director of Nursing (Joy Magnan), the Executive Director, (Nathan Libassi), the Human Resources Manager (Tammy Robbins), and/or other managers, officers, and directors continued on in the same managerial positions with Curis. The question of whether there was also a common identity of stockholders requires discovery. *Id*.

42.     Curis has continued on "in the same business" as Avante, at the same location, with the same employees and management, providing the same services to the same clients. *Id*.

43.     Also a result of the transfer, the Avante at Lynchburg Defendant has ceased doing business and "only one [corporation, Curis] remain[s]." *Id*.

44.     Curis "continues in the old offices [of Avante] with the same telephone number and address as the old company." *Id.*

45.     In addition, the transfer from Avante to Curis amounted to a "consolidation or de facto merger of the two companies." *Id.* at 204.

46.     There was "a continuity of the selling corporation's [Avante's] enterprise, including continuity of management, personnel, physical location, assets, and general business operations[.]" *Blizzard v. Nat'l R.R. Passenger Corp.*, 831 F. Supp. 544, 547 (E.D. Va. 1993).

47.     The question of whether there was a "continuity of ownership" requires discovery. However, identical ownership need not be present. *Kaiser*, 123 F.3d at 206.

48.     There was "prompt liquidation and dissolution of the selling corporation's [Avante at Lynchburg's] business operations[.]" *Blizzard*, 831 F. Supp. at 547. Upon information and belief, any revenues from the transfer went to the Avante Group Defendant, which denies it was Morey's employer (DN 26 ¶ 12)[1], and the Avante at Lynchburg Defendant has ceased doing business and has no income or assets.

49.     There was "an assumption by the purchasing corporation [Curis] of the selling corporation's [Avante's] obligations necessary for normal operation of the seller's business." *Id.* at 547.

50.     The complete continuity of business operations from Avante to Curis with the same managers supervising the same employees plausibly shows that Curis impliedly agreed to assume Avante's existing obligations to its employees, who remained the same after the transition. *See Kaiser*, 123 F.3d at 204.

---

[1] Morey disagrees and asserts that Avante Group is liable as her employer or joint employer. But it is worth noting that the entity Avante asserts was Morey's employer (Avante at Lynchburg) has been replaced by Curis and ceased doing business, and therefore lacks income or assets.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

51.     On or about July 30, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") against the Avante Defendants concerning the facts described in this Complaint. The charge was assigned a charge number of 438-2018-01525. On October 11, 2018, Plaintiff filed an amended charge of discrimination against the Avante Defendants (the "Avante Charge").

52.     The Avante Charge alleged, inter alia, that the Avante Defendants discriminated against Plaintiff because of her sex, subjected her to a hostile work environment based on sex, retaliated against her for engaging in protected activity by reporting the harassment she suffered, all in violation of Title VII, and discriminated against Plaintiff on the basis of disability, in violation of the ADA.

53.     On January 31, 2019, the EEOC issued a Notice of Suit Rights regarding the Avante Charge. Plaintiff sufficiently exhausted all available administrative remedies on her claims against the Avante Defendants as the EEOC issued the dismissal and Notice of Suit Rights concerning these claims and Plaintiff received that notice fewer than 90 days before the filing of this action. A copy of the Notice of Suit Rights as to the Avante Charge is attached hereto as Exhibit 1.

54.     On November 23, 2018, Plaintiff filed a charge of discrimination with the EEOC against the Curis Defendants concerning the facts described in this Complaint. The charge was assigned a charge number of 438-2019-00280 (the "Curis Charge").

55.     The Curis Charge alleged, inter alia, that the Curis Defendants discriminated against Plaintiff because of sex, subjected Plaintiff to a hostile work environment based on sex,

and retaliated against Plaintiff for reporting protected activity, in violation of Title VII, and

discriminated against Plaintiff on the basis of disability, in violation of the ADA.

56.    On January 31, 2019, the EEOC issued a Notice of Suit Rights regarding the

Curis Charge. Plaintiff sufficiently exhausted all available administrative remedies on her claims

against the Curis Defendants as the EEOC issued a dismissal and Notice of Suit Rights

concerning these claims and Plaintiff received that notice fewer than 90 days before the filing of

this action. A copy of the Notice of Suit Rights as to the Curis Charge is attached hereto as

Exhibit 2.


## FACTUAL BACKGROUND

57.    Morey began working for Avante at the Lynchburg Facility on or about April 1,

2017 through a staffing company. From the beginning of her employment until approximately

November 2017, Morey received her paychecks from the staffing company while Avante

exercised complete control over the terms and conditions of her work and employment. From

approximately November 2017 until the end of her employment, Morey received her paychecks

from Avante. Throughout the entire period that Morey worked for Avante at the Lynchburg

Facility — approximately April 1, 2017 through sometime in late April or May, 2018 — Avante

exercised control over the terms and conditions of Morey's employment.

58.    At all relevant times, Morey's direct supervisor was Avante's Director of

Nursing, Joy Magnan.

59.    Throughout her employment, Morey worked hard, performed to a high standard,

and (until she began complaining about sexual harassment) received positive performance

reviews. For example, Morey's second-line supervisor, Nathan Libassi, continually praised Morey's work both in her management of staff and her care of patients.

60.     On or about January 22, 2018, Avante hired Frank Popa to work at the Facility as the Staffing Development Coordinator. Almost immediately, Popa began sexually harassing members of the female staff, including Morey.

61.     Popa was a higher-ranking Avante employee than was Morey.

62.     On his first day at Avante, Popa established a habit of standing close to Morey and putting his hand on her shoulders. This behavior was unwelcome.

63.     Two to three days after he started working at Avante, Popa escalated his behavior and began moving his hand up and down Morey's back and rubbing her buttocks.

64.     On or about February 1, 2018, Morey reported Popa's behavior to her direct supervisor and Avante's Director of Nursing, Joy Magnan. Magnan advised Morey to tell Popa his behavior was making her uncomfortable and to ask him to stop.

65.     Accordingly, the next day, February 2, when Popa again inappropriately touched Morey, Morey did as Magnan had advised: she told Popa to stop, and again reported his behavior to her supervisor Magnan. At this point Magnan also requested that Morey submit to her a written a statement about Popa's actions. Morey wrote that statement the same day and gave it to Magnan.

66.     Despite Morey's clear statements to Popa and Magnan that Popa's conduct was unwanted, Popa did not stop sexually harassing Morey. On the contrary, he became more aggressive. Morey tried to avoid him whenever possible, but on or about February 5, Popa entered Morey's office and moved so close to Morey that when she looked up from her work, Popa's lips nearly touched hers. Surprised, Morey pulled back quickly from Popa and

subsequently spoke to Magnan about the incident. Magnan had actually witnessed the incident herself and provided a statement to Libassi describing Popa's behavior toward Morey. Despite this, no action was taken to protect Morey from Popa's harassing behavior.

67.    Emboldened by Avante's failure to intervene and protect Morey, Popa's conduct became increasingly predacious. These are just a few examples:

A) on February 14, in Morey's office, Popa groped Morey's breasts;

B) on February 23, outside an office hallway, Popa grabbed Morey's buttocks;

C) on March 1, in Magnan's office, Popa reached between Morey's legs and grabbed her buttocks;

D) on March 8, near the office printer, Popa forcefully grabbed Morey's breasts;

E) on March 14, in a Twin Lakes medicine room, Popa groped Morey's vaginal area through her clothes;

F) on March 23, Popa approached Morey from behind and began massaging her lower back; and

G) on April 6, Popa cornered Morey in a basement supply room and pushed himself against her; Morey asked him to move but he refused. Morey only escaped by pushing past him and leaving the room.

68.    After each assault, Morey indicated to Popa that his conduct was unwanted and reported his actions to her supervisors, including Magnan, Libassi, and Tammy Robbins in Avante's Human Resources Department. Morey also forwarded her complaints to the appropriate authorities at Avante's corporate offices in Florida.

69.    In response, an Avante corporate representative, who spoke to Morey at Avante Lynchburg with Magnan present, told Morey that, "This was the South" and that Popa's behavior

was normal in the South where "people talk with their hands." This was just one of the excuses that the corporate representatives gave for doing nothing to help Morey.

70.     Although Morey and Magnan filed multiple detailed formal complaints about Popa's unceasing sexual harassment, Popa faced no discipline and management took no efforts to attempt to correct his behavior or to separate him from Morey. Instead, management began to retaliate against Morey, compounding the severe harm it had already done.

71.     In short, Morey repeatedly reported Popa's sexually terrifying groping and degrading behavior throughout Popa's ongoing campaign of harassment, to numerous of her superiors and Human Resources. Yet no action was taken to stop Popa or protect Morey from his harassment.

72.     In addition, Avante knew and/or should have known about Popa's harassment from other sources. Yet no action was taken to stop Popa or protect Morey from his harassment.

73.     Popa's sexually harassing conduct was offensive and unwelcome. Popa's actions made Morey feel terrified, disgusted, and humiliated.

74.     On March 23, Morey went to Libassi to again complain in person of Popa's actions and to request that something be done. Libassi responded by telling Morey he was aware of the situation, adding, "You are aware he outranks you, right?" Afterward, when Morey protested that rank should not matter and again informed Libassi that Popa had been sexually harassing her, Libassi ended the conversation and dismissed her.

75.     Following this conversation, Libassi not only continued doing nothing to assist Morey but began actively retaliating against her. First, he told Magnan that if Morey did not return to school and enroll in a program for further education that Morey would be demoted and have her pay cut. Libassi falsely claimed that if Morey did not do this she would be in violation

17

of an employment contract. Then, for the first time, Libassi began to criticize Morey's work, telling her she was "not approachable" and that "people" had complained that Morey had been "rude" to them. Throughout this time, Libassi continued to take no action against Popa or to ensure Morey's safety. Disturbingly, after Libassi learned of Morey's complaints, Libassi repeatedly created situations in which Morey was required to be alone with Popa.

76.     On April 13, Morey again went to Human Resources Representative Robbins to complain about the sexual harassment and sexual assaults she was enduring. Rather than take any action, Robbins accused Morey of behaving and dressing in a manner that invited Popa to grope her. In fact, Morey dressed and behaved professionally at all times, and did not give anyone permission to grope or sexually assault her, explicitly or by implication.

77.     On April 18, Libassi issued Morey a formal (and false) written reprimand for "stealing time." The reprimand criticized Morey for not using the time clock appropriately, although Morey had previously told Libassi that the time clock was not functioning properly. Furthermore, Morey had requested and been approved to take off the time in question to attend a doctor's appointment.

78.     Popa's ceaseless sexual harassment, assault, and battery, as well as Avante's refusal to protect Morey despite her repeated pleas for protection, caused Morey stress so severe that it caused mental disabilities, including but not limited to acute stress disorder, post-traumatic stress disorder, major depressive disorder, insomnia, and panic attacks, which required Morey to take leave from work. As a result of the extreme stress she experienced, Morey's hair began falling out.

79.     On or about April 23, 2018, Morey requested medical leave due to the injuries caused by the sexual harassment, assault, and battery. Even though Morey was entitled to job-

protected FMLA leave, Avante (incorrectly) informed Morey she was not entitled to job-protected FMLA leave and denied her the same. Morey's doctor notified Avante that her need for leave was due to psychological injuries from workplace sexual harassment. Avante initially allowed Morey 30 days of non-FMLA "personal leave," which began on April 24, 2018. At the end of the 30-day period, however, Morey's doctor ordered Morey to take an additional 30 days of leave.

80.    At some time in late May 2018, the Facility where Morey worked and/or the contract for provision of nursing services at the Facility was transferred or otherwise transitioned from Avante to Curis. As a result, Curis became the employer at the Facility where Morey worked. Other nurses and employees who were not disabled and not on medical leave had their employment transitioned from Avante to Curis. But Morey was informed that if she did not return to work by May 31, 2018, she would be fired by Curis because she was on medical leave.

81.    Because Morey was disabled due to the sexual harassment she experienced, she was unable to return to work by May 31.

82.    While Morey was on leave, her employment was terminated by one or more Defendants because of her disability, request for leave, and/or need for FMLA/medical leave: either by the Avante Defendants before the transition to Curis, and/or by Curis after the transition.

83.    A dispute exists between the Defendants as to the timing of Morey's termination, and which Defendant terminated Morey.

84.    The Curis Defendants appear to assert that Morey was terminated by the Avante Defendants while she was on medical leave, because she was on medical leave, at some point *before* the May 31, 2018 transition from Avante to Curis. Therefore, the Curis Defendants assert,

Morey was not an employee of Avante at the time Curis took over the employment of the Avante staff at the Lynchburg facility, while the other Avante staff (who had their employment continued with Curis) were employees of Avante at the time Curis took over.

85.   The Avante Defendants, by contrast, appear to assert that the Avante Defendants did *not* terminate Morey's employment prior to the transition to Curis. The Avante Defendants assert that at the time of the transition from Avante to Curis, Morey was a current Avante employee on non-FMLA, non-job-protected personal leave, and that Morey's employment with Avante ceased at the same time the employment of the other staff at the Lynchburg facility with Avante ceased, simply as a consequence of the transition of the facility's ownership from Avante to Curis on the end of May 2018.

86.   Morey, at this time, does not take a position as to the truth or falsity of Curis' assertions or Avante's counter assertions regarding the timing of Morey's termination or which Defendant terminated her, but only notes that these assertions by Defendants present a factual dispute between the Defendants to be resolved by the fact-finder. Morey asserts that was she was entitled to job-protected FMLA leave and/or leave as an accommodation under the ADA, that Defendants denied her job-protected leave, and that one or more Defendants terminated her employment because of her disability, need for leave, and/or requests for leave.

87.   As a result of Defendants' actions, Plaintiff has suffered damages.

**COUNT I[2]**
**Violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2(a)(1)**
**Sex Discrimination / Harassment — Hostile Work Environment**
**(Avante and Curis Defendants)**

88.     The foregoing paragraphs are incorporated herein as if set forth in full.

89.     Plaintiff was subjected to severe and/or pervasive sexual harassment and a sexually hostile work environment that was both offensive and unwelcome.

90.     The offensive and unwelcome conduct was based on Plaintiff's sex.

91.     The offensive and unwelcome conduct was sufficiently severe and/or pervasive to alter Plaintiff's conditions of employment and to create a hostile and abusive work environment.

92.     The offensive and unwelcome conduct is imputable to Avante.

93.     Avante failed to remedy the sexual harassment and sexually hostile work environment to which Plaintiff was exposed.

94.     Any reasonable person would have felt that Plaintiff was being subjected to sexual harassment and/or a sexually hostile work environment due to Popa's sexually offensive groping and behavior against her, and by Avante's conduct in failing to effectively remedy the sexual harassment/sexually hostile work environment.

95.     Avante knew or should have known about the sexual harassment and failed to take effective action to stop it.

96.     Avante's actions as set forth above constitute violations of Title VII of the Civil Rights Act of 1964, and have caused Plaintiff to suffer damages, including lost past and future wages, emotional distress damages, and other damages.

---

[2] All captions or headings used herein are for organizational purposes only and should not be construed as limiting the scope of any claims.

97.     To the extent Curis is a successor in interest to Avante, Curis is responsible (jointly and severally with Avante) for Avante's unlawful conduct with respect to Morey, as well as for Curis' own ADA and FMLA violations.

## COUNT II
## Battery, Virginia Common Law
## (Avante and Curis Defendants)

98.     The foregoing paragraphs are incorporated herein as if set forth in full.

99.     Popa made an intentional, unlawful, harmful, and offensive sexual contact with and on the person of Plaintiff including, but not limited to, sexually groping Plaintiff.

100.    Popa's sexual contact with and on Plaintiff's person was unwanted, unconsented to, unexcused, and unjustified.

101.    The Avante Defendants knew and/or should have known about Popa's behavior, yet refused to do anything to address it.

102.    At all times relevant, Popa was employed by Avante. At all times relevant, Popa was an agent of Avante and was acting within the scope of that agency.

103.    As Popa was Avante's agent, servant and employee, Avante is vicariously liable for Popa's wrongful conduct and Morey's resulting injuries and damages.

104.    As a direct and proximate result of the wrongful conduct of Popa and the Avante Defendants, Plaintiff suffered great mental anguish, pain and suffering, humiliation and shame, damage to her career and professional reputation and other damages, lost wages, and incurred medical and legal expenses.

105.    The conduct of Popa and the Avante Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages in an amount sufficient to deter future similar conduct by Defendants and their agents and others in the future.

106.    Avante's actions as set forth above have caused Plaintiff to suffer damages.

107.    To the extent Curis is a successor in interest to Avante, Curis is responsible (jointly and severally with Avante) for Avante's unlawful conduct with respect to Morey, as well as for Curis' own ADA and FMLA violations.

## COUNT III
### Assault, Virginia Common Law
### (Avante and Curis Defendants)

108.    The foregoing paragraphs are incorporated herein as if set forth in full.

109.    Popa's actions toward Plaintiff were intended to cause Plaintiff to feel apprehension of a harmful or offensive contact with or on her person.

110.    That apprehension of a harmful and offensive contact caused Plaintiff to suffer harm and injury.

111.    Plaintiff suffered damages thereby as set forth herein.

112.    The Avante Defendants knew and/or should have known about Popa's behavior, yet refused to do anything to address it.

113.    At all times relevant, Popa was employed by Avante. At all times relevant, Popa was an agent of Avante and was acting within the scope of that agency.

114.    As Popa was Avante's agent, servant and employee, Avante is vicariously liable for Popa's wrongful conduct and Morey's resulting injuries and damages.

115.    As a direct and proximate result of the wrongful conduct of Popa and the Avante Defendants, Plaintiff suffered great mental anguish, pain and suffering, humiliation and shame, damage to her career and professional reputation and other damages, lost wages, and incurred medical and legal expenses.

116.    The conduct of Popa and the Avante Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages in an amount sufficient to deter future similar conduct by Defendants and their agents and others in the future.

117.    Avante's actions as set forth above have caused Plaintiff to suffer damages.

118.    To the extent Curis is a successor in interest to Avante, Curis is responsible (jointly and severally with Avante) for Avante's unlawful conduct with respect to Morey, as well as for Curis' own ADA and FMLA violations.

**COUNT IV**
**Violations of Title VII, 42 U.S.C. §§ 2000e–2(a)(1)**
**Constructive Discharge**
**(Avante and Curis Defendants)**

119.    The foregoing paragraphs are incorporated herein as if set forth in full.

120.    Avante knowingly subjected Morey to a sexually hostile work environment and repeated sexual battery, despite her repeated requests for protection, which Avante knowingly ignored.

121.    In so doing, Avante deliberately subjected Morey to intolerable working conditions.

122.    As a result of Avante's actions and inactions, Morey suffered severe psychological injuries. These injuries required her to take unpaid medical leave from her employment due to the intolerable working conditions.

123.    When Morey went out on medical leave beginning on or about April 23, 2018, she was unable to work at Avante because of the intolerable working conditions and the injuries they caused.

124.     By the last day Morey worked for Avante, her working environment had become so intolerable that her leaving Avante was a fitting response. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004).

125.     As a result of leaving Avante due to the intolerable working conditions, Morey was unable to continue her employment with Curis, as Curis did not allow her to transition to Curis due to the fact that she was on medical leave and unable to work at the time of the transition. *See, e.g.*, *White v. Honeywell, Inc.,* 141 F.3d 1270, 1279 (8th Cir. 1998) (An employee is constructively discharged, for purposes of Title VII, where intolerable working conditions force employee into unpaid medical leave of absence from which he or she is unable to return).

126.     Accordingly, Avante constructively discharged Morey in violation of 42 U.S.C. § 2000e–2(a)(1).

127.     By constructively discharging Morey, Avante has caused her to suffer damages.

128.     To the extent Curis is a successor in interest to Avante, Curis is responsible (jointly and severally with Avante) for Avante's unlawful conduct with respect to Morey, as well as for Curis' own ADA and FMLA violations.

**COUNT V**
**Violations of Title I of the Americans with Disabilities Act**
**Disability Discrimination**
**(Avante and Curis Defendants)**

129.     The foregoing paragraphs are incorporated herein as if set forth in full.

130.     At all times relevant, Plaintiff's psychological injuries and/or being regarded as having psychological injuries and/or having a record of psychological injuries rendered her an individual with a disability under the ADA.

131.     At all times relevant, all Defendants had notice of Plaintiff's disability.

132.   At all times relevant, Plaintiff was perceived by all Defendants to be suffering from a disability.

133.   At all times relevant, Plaintiff was perceived by all Defendants as having a record of a disability.

134.   Plaintiff asked Defendants for a reasonable accommodation of her disability, in the form of temporary leave (extending past May 31, 2018) to seek medical attention and heal.

135.   Defendants could have provided the requested accommodation without incurring any undue hardship.

136.   The Curis Defendants refused Plaintiff a reasonable accommodation and refused to allow her to continue her employment at the Lynchburg Facility. Alternatively, the Avante Defendants refused Plaintiff a reasonable accommodation and terminated her while she was on temporary leave, before she was medically able to return, and before the transition to Curis.

137.   By summarily terminating Morey's employment and refusing to allow her to continue working at the Lynchburg Facility, the Curis Defendants and/or Avante Defendants denied Morey's request for accommodation without discussing it with her or having a conversation with her about possible reasonable accommodations.

138.   In so doing, Curis and/or Avante (1) summarily denied Morey's request for accommodation without discussing it with her or engaging in any interactive process to identify and implement a reasonable accommodation, and (2) terminated and/or refused to allow Morey to continue her employment because of her disability and/or perceived disability, and/or for having a record of a disability and/or perceived disability.

139.   The Curis Defendants and/or Avante Defendants took adverse employment action against Plaintiff by terminating Plaintiff's employment and refusing to allow her to continue her

employment at the Lynchburg Facility, while other Avante employees, who did not have disabilities or records of disabilities or were not regarded as having disabilities, were allowed to continue their employment at the Lynchburg Facility under the Curis Defendants.

140.    At the time of Plaintiff's discharge and denial of continued employment, she was performing her job at a level that met the Curis Defendants' and Avante Defendants' legitimate expectations.

141.    The Curis Defendants and/or Avante Defendants unlawfully discriminated against Plaintiff by terminating her and/or denying her continued employment, at least in part, on the basis of disability.

142.    The Curis Defendants' and/or Avante Defendants' actions as set forth above constitute violations of the ADA, and have caused Plaintiff to suffer damages.

**COUNT VI**
**Violations of Title VII of the Americans with Disabilities Act**
**Retaliation**
**(Avante and Curis Defendants)**

143.    The foregoing paragraphs are incorporated herein as if set forth in full.

144.    Plaintiff engaged in protected activity by requesting medical leave as a reasonable accommodation for her disability.

145.    The Curis Defendants and/or Avante Defendants took adverse employment action against Plaintiff by terminating Plaintiff's employment and/or refusing to allow her to continue her employment at the Lynchburg Facility, while other Avante employees, who did not request accommodations, were not terminated and were allowed to continue their employment at the Lynchburg Facility under the Curis Defendants.

146.    At the time of Plaintiff's termination, she was performing her job at a level that satisfied Defendants' legitimate expectations.

147.     The Curis Defendants and/or Avante Defendants terminated Plaintiffs'

employment and/or refused to allow Plaintiff to continue her employment, at least in part,

because of Plaintiff's need for accommodation and/or Plaintiff's request for accommodation

and/or to prevent her from requesting future accommodations.

148.     But for Plaintiff's protected activity, the Curis Defendants and/or Avante

Defendants would not have terminated her employment and/or refused to allow her to continue

her employment after the transition from Avante to Curis at the Lynchburg Facility.

149.     The Curis Defendants' and/or Avante Defendants' actions as set forth above

constitute violations of the ADA, and have caused Plaintiff to suffer damages.

**COUNT VII**
**Violations of Family Medical Leave Act (FMLA)**
**Interference — 29 U.S.C. § 2615(a)(1)**
**(Avante and Curis Defendants)**

150.     The foregoing paragraphs are incorporated herein as if set forth in full.

151.     Plaintiff was an eligible employee under the definitional terms of the FMLA.

152.     As of April 24, 2018, Plaintiff was employed by the Avante Defendants for at

least twelve (12) months. Plaintiff's 12 months of service resulted from her continuously

working for Avante through the staffing company for approximately at least 7 months (April 1,

2017 to November 1, 2017) and then continuing to work for Avante without any involvement by

the staffing company from approximately another 5 months (November 1, 2017 to April 1,

2018). Throughout the entire period that Morey worked for Avante at the Lynchburg Facility —

regardless of which entity's name was on her paychecks — Avante exercised control over the

terms and conditions of Morey's employment. Avante and the staffing company were joint

employers of Morey for the purpose of the FMLA time-in-service and other requirements. *See* 29 C.F.R. § 825.106.

153.    Further, Plaintiff had at least 1,250 hours of service with Avante during the twelve (12) month period preceding April 24, 2018.

154.    Curis was a successor in interest to Avante for the purpose of Morey's FMLA rights. *See* 29 C.F.R. § 825.107. Because Curis was a successor in interest to Avante, Morey's entitlements under the FMLA are the same as if the employment by Avante and Curis were continuous employment by a single employer.

155.    Each Defendant was an employer covered by the terms of the FMLA.

156.    Each Defendant is engaged in an industry affecting commerce and employed fifty (50) or more employees for twenty (20) or more calendar workweeks in 2017 and 2018.

157.    Plaintiff's psychological injuries caused by the sexual harassment and abuse she suffered as described herein constituted a serious health condition.

158.    Plaintiff was entitled to leave under the FMLA.

159.    Plaintiff was entitled to receive leave under the FMLA for a total of twelve (12) workweeks of leave, and Defendants were not permitted to interfere with Plaintiff's exercise of her right to take leave or to retaliate against Plaintiff for exercising her rights under the FMLA.

160.    The Curis Defendants and/or the Avante Defendants denied Plaintiff FMLA benefits to which she was entitled, including her right to take job-protected leave under the FMLA.

161.    The Curis Defendants and/or the Avante Defendants interfered with Plaintiff's FMLA rights by firing Plaintiff and/or not allowing Plaintiff to continue her employment at the Lynchburg Facility to prevent her from taking a future FMLA leave of absence.

162.    The Curis Defendants and/or the Avante Defendants interfered with Plaintiff's FMLA rights by failing to provide her with the mandated individualized notice of her right to take FMLA leave.

163.    As a result of the Curis Defendants' and Avante Defendants' actions as described above, the Curis Defendants and /or Avante Defendants violated the FMLA, causing prejudice to Plaintiff and causing Plaintiff to suffer damages.

164.    The Curis Defendants' and/or Avante Defendants' actions as set forth above constitute violations of the FMLA, and have caused Plaintiff to suffer damages.


**COUNT VIII**
**Violations of Family Medical Leave Act (FMLA)**
**Retaliation — 29 U.S.C. § 2615(a)(2)**
**(Avante and Curis Defendants)**

165.    The foregoing paragraphs are incorporated herein as if set forth in full.

166.    Defendants retaliated against Plaintiff by firing her and refusing to allow her to continue her employment for requesting and/or taking a leave of absence that was FMLA-qualifying.

167.    Plaintiff engaged in protected activity under the FMLA by requesting and/or taking leave that Defendants should have designated and treated as FMLA-protected leave.

168.    The Curis Defendants and/or Avante Defendants terminated Plaintiff and/or refused to allow her to continue her employment at the Lynchburg Facility, at least in part, in retaliation for taking and/or requesting time off and/or to prevent her from taking future time off that Defendants should have designated and treated as FMLA-protected leave.

169.    Thus, the Curis Defendants' and/or Avante Defendants' adverse action of terminating Plaintiff and/or refusing to allow her to continue her employment was causally

connected to Plaintiff's protected activities of requesting and/or taking leave that Defendants

should have designated and treated as FMLA-protected leave.

170.    As a result of the Curis Defendants' and/or Avante Defendants' actions as

described above, Defendants violated the FMLA, causing prejudice to Plaintiff and causing

Plaintiff to suffer damages.

## DAMAGES

171.    As a result of Defendants' sex discrimination and sexually offensive hostile work

environment, assault and battery, disability discrimination, FMLA violations, and other unlawful

conduct, Plaintiff has suffered psychological injuries, mental anguish, personal and professional

humiliation, emotional distress, loss of enjoyment of life, loss of past and future wages and

benefits, curtailment of career opportunities, and other damages.

172.    Defendants' conduct described herein was willful, deliberate, malicious, and

outrageous, so as to make an award of punitive damages appropriate.

## PRAYER FOR RELIEF

173.    Accordingly, Plaintiff prays for judgment in her favor and against Defendants,

and that this Court enter an Order:

A.    Providing Plaintiff is to receive all relief allowed by law;

B.    Prohibiting Defendants from continuing to maintain their illegal policy, practice,

or custom of discriminating against employees based on sex and/or subjecting

female employees to a sexually offensive hostile work environment;

C.    Ordering equitable relief of the institution of an anti-discrimination educational

program approved by this Court, for all of Defendants' employees, which

educational program includes specific and separate components for, and examples

of, all types of employment discrimination recognized under federal and Virginia law, including all statutes of limitations and remedies; and including internal-to-Defendants complaint procedures, rights and remedies for claims of discrimination and retaliation, for a period of five years, which internal procedure includes an optional independent (not controlled by Defendants) hotline for employee discrimination complaints, all paid for by Defendant;

D.   Ordering that the above educational program be provided live, once a year, for five years, for all employees, and a video of that live program shall be made available to each new subsequent hire as part of the orientation training; and, that annual reports attesting to the same be made to this Court, or that a comparable system for annual reporting the same be implemented to monitor Defendants' institution of such educational program;

E.   Ordering that Defendants, on an annual basis, shall distribute a written anti-discrimination policy approved by this Court, along with a fact sheet stating the statutes of limitations for filing with the Equal Employment Opportunity Commission (EEOC) and the Virginia Division of Human Rights, and both agencies' respective phone numbers, email addresses, and postal addresses;

F.   Ordering that Plaintiff is to be awarded lost past and future wages and benefits in an amount to be determined at trial;

G.   Ordering that Plaintiff is to be awarded all medical expenses and all other out-of-pocket costs and expenses she incurred as a result of Defendants' unlawful conduct;

H.   Ordering that Plaintiff is to be awarded damages for emotional distress, humiliation, loss of enjoyment of life, pain and suffering, and/or other compensatory damages in an amount to be determined at trial;

I.   Ordering that Plaintiff is to be awarded punitive damages in an amount to be determined at trial;

J.   Ordering that Plaintiff is to be awarded liquidated damages as allowed by law;

K.   Ordering that Plaintiff is to be awarded the costs and expenses of this action, including expert witness fees, pre and post judgment interest, and reasonable attorneys' fees;

L.   Ordering that Plaintiff is to be awarded any and all other equitable and legal relief allowed by law as the Court deems just and appropriate;

M.   Ordering that Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

Respectfully submitted,

TERESA MOREY
By Counsel

Dated: December 18, 2019

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
p: (434) 218-3133
f: (434) 321-1636

tc@coffieldlaw.com

/s/ Robert Porter
Robert Porter
Virginia State Bar No.: 78934
The Spiggle Law Firm
4830 31st Street South, Suite A
Arlington, Virginia 22206
(202) 449-8527 (telephone)
(202) 540-8018 (facsimile)
rporter@spigglelaw.com

Counsel for Plaintiff

## **CERTIFICATE**

I hereby certify that on December 18, 2019, I served the foregoing Second Amended Complaint on all counsel of record through the Court's CM/ECF system.


/s/Timothy Coffield
Counsel for Plaintiff